UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| JO WHITLOCK and | ) | |
| JESSE WHITLOCK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No: 4:07-CV-4-AS-APR |
| | ) | |
| SHAWN A. BROWN, individually as an | ) | |
| Officer for the Indiana Department of | ) | |
| Natural Resources, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM, OPINION & ORDER

This matter is before the Court on the Motion for Partial Summary Judgment [DE 31] filed by Plaintiffs Jesse Whitlock and Jo Whitlock on March 7, 2008 and the Motion for Summary Judgment [DE 32] filed by Defendant Officer Shawn Brown on March 7, 2008. The Court heard oral argument on the pending motions on April 28, 2008 in Lafayette, Indiana, and the issues have been fully briefed. For the reasons set forth below, the Plaintiffs' motion for partial summary judgment is denied, and the Defendant's motion for summary judgment is granted.

I. Facts

During the week of July 4, 2005, Jesse and Jo Whitlock, along with their daughter Tara and friends Patty Seewright and Chuck Seewright, went camping at the Indiana Dunes State Park located in Northwest Indiana. The Whitlocks were avid campers who maintained a general practice of "scavengering" abandoned campsites for firewood,

supplies, and other items left behind.

Early in the morning on Friday, July 8, 2005, Mr. Whitlock walked around the campground area looking for firewood. Upon arriving back at his campsite, Mr. Whitlock told his wife, Mrs. Whitlock, that he had seen a backpack and some other items that had been left leaning up against a tree, which he thought were inadvertently left behind. Around noon, Mr. and Mrs. Whitlock drove around to different campsites collecting abandoned firewood when they decided to pick up the backpack (and other items) discovered earlier that day by Mr. Whitlock. The Whitlocks spoke to nearby campers to inquire if anyone knew who had left the backpack and camping equipment consisting of a child's backpack, a folding chair, and a bag of apples. With no one having recently seen campers at the site, Mrs. Whitlock took the backpack and camping equipment with the intention of taking the items to the campground guard shack's lost and found.

Instead of driving directly to the guard shack, the Whitlocks returned to their campsite to pick up Tara so they could go shopping at the outlet mall in Michigan City, Indiana. On their way out of the camping area, the Whitlocks forgot to stop at the guard shack and drop off the lost items. When the Whitlocks returned to the park, they went to their campsite and put away the groceries before taking the items to the lost and found. At this time, and before returning the items, Mrs. Whitlock looked inside the side pocket of the backpack and found a wallet containing identifying information for Mr. Neil Kohlhoff.

At approximately 3:50 p.m., Mrs. Whitlock called "information," obtained Mr. Kohlhoff's phone number, and called Mr. Kohlhoff. Unable to reach Mr. Kohlhoff, Mrs. Whitlock left a message on his answering machine stating that she had found his items and was taking them to the campground guard shack. Mrs. Whitlock identified herself and left her telephone number in the message. Mr. Kohlhoff never gave the Whitlocks permission to take his property.

The Whitlocks then brought the backpack and camping equipment to the Department of Natural Resources ("DNR") guard shack, where they spoke with DNR employee Amanda Klahn. The Whitlocks were then questioned by Officer Victor Santiago, who informed them that Mr. Kohlhoff had reported the theft of his belongings. DNR Officer Shawn Brown arrived and took over the investigation. After questioning, the Whitlocks were allowed to return to their campsite where they stayed until leaving the park on Sunday.

After conducting his investigation, Officer Brown prepared his Indiana Conservation Case Report. Both Officers Brown and Santiago believed that probable cause existed for a charge of Conversion, a Class A misdemeanor. Officer Brown submitted his probable cause affidavit to the Porter County Prosecutor's Office. The Porter County Prosecutor ultimately determined that the Whitlocks should be charged, and on July 14, 2005, filed an Information in the Porter Circuit Court charging the Whitlocks with committing the crime of Conversion. Arrest warrants for the Whitlocks issued on

3

July 15, 2005, and they were arrested on August 28, 2005 in Tippecanoe County, Indiana. Officer Brown was not present and did not participate in the Whitlocks' arrest.

On October 28, 2005, the charges were dismissed by the Porter County Prosecutor, citing "Prosecutorial Discretion" as the reason for the dismissal. The prosecutor's file was destroyed in 2006.

II. Procedural History

The Whitlocks filed their Complaint [DE 1] in this Court on January 18, 2007, naming Officer Shawn Brown and the Indiana DNR as defendants. On June 12, 2007, Defendant Indiana DNR filed a Motion for Judgment on the Pleadings [DE 16]. Plaintiffs responded on July 2, 2007 and also filed a Motion to Dismiss Defendant DNR without prejudice [DE 20]. The Motion to Dismiss was granted and the Motion for Judgment on the Pleadings was denied as moot on July 9, 2007 [DE 23].

The Whitlocks filed the pending Motion for Partial Summary Judgment [DE 31], seeking an order declaring that the Whitlocks were falsely accused, arrested, and imprisoned as a result of the false and misleading probable cause affidavit submitted to the court by Defendant Officer Brown. Officer Brown filed a Motion for Summary Judgment [DE 32], stating that he did not violate the Whitlock's Fourth Amendment rights and did not falsely arrest them. Officer Brown also contends that he is entitled to qualified immunity from the Whitlock's federal claims and is immune from the state-law claim under the Indiana Tort Claims Act for initiation of a judicial proceeding.

4

III.  Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).  When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other.  *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944).  Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment.  *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).  *See*

*also Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (stating that "a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper. In this situation, there can be "'no genuine issue of any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

IV.  Discussion

Plaintiffs' Complaint alleges that Officer Brown acted willfully, wantonly, and with malice and that he violated 42 U.S.C. § 1983 when he "seiz[ed] them in violation of clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution." Complaint at 6. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To recover damages under this statute, the Plaintiffs must show that: (1) they had a constitutionally protected right, (2) they were deprived of that right in violation of the Constitution, (3) the Defendant intentionally caused that deprivation, and

6

(4) the Defendant acted under color of state law. *Long v. Durnil*, 697 N.E.2d 100, 105 (Ind. Ct. App. 1998).

    A. *Fourth Amendment Claims*

The Warrant Clause of the Fourth Amendment states that "[N]o warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." A plaintiff cannot successfully base a Fourth Amendment claim on an arrest made pursuant to a valid warrant. *Neiman v. Keane*, 232 F.3d 577, 579-80 (7th Cir. 2000). The Fourth Amendment "'demands a factual showing sufficient to comprise "probable cause," [and] the obvious assumption is that there will be a *truthful* showing.'" *Franks v. Delaware*, 438 U.S. 154, 166 (1978) (quoting *United States v. Halsey*, 257 F.Supp. 1002, 1005 (S.D.N.Y. 1966)). This showing must "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 166. If, however, an officer seeking a warrant "purposefully or recklessly withholds facts that could negate probable cause, the officer may be liable for violating the victim's civil rights." *Olson v. Tyler*, 825 F.2d 1116, 1118 (7th Cir. 1987) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)). Thus, to bring a § 1983 claim for unlawful arrest, the Plaintiffs must demonstrate the absence of probable cause. *Jones by Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995).

Probable cause to arrest exists if, "at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the

suspect has committed, is committing, or is about to commit an offense.'" *Wagner v. Washington County*, 493 F.3d 833, 836 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). *See also Link v. Taylor,* 2008 WL 2074138 (N.D. Ind. May 14, 2008); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1995). Probable cause is a "commonsense, nontechnical conception[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)(internal citations omitted)). The probable cause inquiry is fact-intensive and must be evaluated "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). This test is an objective one; the inquiry is whether a reasonable officer would have believed that the person had committed a crime. *Id*. at 1057-58.

    This case is unique because it is not one in which Officer Brown arrested the Whitlocks without an arrest warrant. Instead, Officer Brown completed his case report and then submitted his affidavit to the Porter County Prosecutor. Thereafter, the arrest warrant issued. Thus, the focus of the court's inquiry must be on whether, with the information before it, the magistrate was able to make a reasonable determination of probable cause.

    Plaintiffs contend that the "facts which were presented to the Court to support the

8

issuance of an arrest warrant were incomplete" and that probable cause did not exist to arrest Mr. and Mrs. Whitlock.  DE 34 at 10.  Specifically, Plaintiffs asserts that Officer Brown "sent only a uniform citation and omitted his case report *and* the incident report of Santiago."  DE 34 at 12 (emphasis in original).  Thus, the Plaintiffs state that the failure of Officer Brown to articulate any of the exculpatory details of the circumstances in which the Whitlocks took the lost, unattended, or abandoned items to park officials, of their own accord, violated their constitutional rights.  DE 34 at 15.  In response, Defendant states that Officer Brown *did* submit a copy of his case report to the prosecutor's office.[1]  DE 38 at 7.  *See also* Brown Affidavit at 81:7-10 (stating that Officer Brown submitted his case report along with his probable cause affidavit).

    In this case, the prosecutor's file has been destroyed, and the certified complete copy of the Porter County Superior Court's file on Mr. and Mrs. Whitlock does not contain a copy of Officer Brown's case report.  Thus, the Court has no record of what was submitted to the prosecutor by Officer Brown other than Officer Brown's own statements.  At this stage of the proceeding, however, and under the summary judgment standard, Officer Brown's self-serving statements are not sufficient to carry his evidentiary burden.  *Kornacki v. Norton Performance Plastics*, 956 F.2d 129, 131 (7th Cir. 1992).  Plaintiffs correctly assert that, along with his motion for summary judgment, Officer Brown could have submitted an affidavit by the Porter County Prosecutor stating either that Officer

---

[1] Officer Brown does not contend that he also sent a copy of Santiago's report.  Accordingly, the Court limits its consideration to that of Officer Brown's report.

9

Brown had, in fact, submitted his case report *and* probable cause affidavit, or that Officer Brown and the prosecutor had discussed the case such that the prosecutor was informed of all of the circumstances surrounding the events in question. But Officer Brown submitted no such affidavit with his motion for summary judgment. Accordingly, the Court must proceed on the basis that Officer Brown did not submit his report or Officer Santiago's report with his probable cause affidavit.

A review of the probable cause affidavit reveals that the only information before the court in support of the arrest warrants was Officer Brown's statement that the defendants committed the crime of conversion on July 8, 2005 and that Amanda Klahn, a witness, advised Officer Brown that Jesse N. Whitlock, at Indiana State (Dunes) Park Campground, exerted unauthorized control over personal property and belongings belonging to Neil Kohlhoff by taking and possessing the victim's personal property for several hours with the intent to deprive Neil Kohlhoff of any part of the property's value or use. Officer Brown's Affidavit for Probable Cause [DE 31-7]. The affidavit is devoid of any facts which, if they had been provided to the judge, could have detracted from a finding of probable cause. Officer Brown's Affidavit did not include any of the information contained in his case report such as the fact that the items were returned, that none of the items were missing when returned, and that Mrs. Whitlock had called Mr. Kohlhoff and left a message informing him that the Whitlocks had found his items and were leaving them at the guard shack. Because facts, as assumed at the summary

10

judgment stage, that could have negated probable cause were withheld when the warrants were sought in this case, the Court finds that probable cause is vitiated. *See Gates,* 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."). *See also Mannoia v. Farrow*, 476 F.3d 453, 458 (7th Cir. 2007) ("A reckless disregard for the truth can also be established by showing that Farrow failed to inform the judge of facts that he knew would detract from a finding of probable cause). To be clear, the Court does not find that based on the circumstances in this case there did not exist probable cause to arrest the Whitlocks; rather, the Court simply finds that there was not a proper determination of probable cause to obtain a warrant. By failing to also submit his case report (along with his probable cause affidavit), Officer Brown effectively prevented the magistrate from having before it all of the relevant information on which to make a probable cause determination based on the totality of the circumstances. *United States v. Scheets*, 188 F.3d 829, 839 (7th Cir. 1999). Because a proper probable cause determination was not made in this case, the Court must determine whether Officer Brown is entitled to qualified immunity.

    B. *Qualified Immunity*

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which

11

a reasonable person would have known." *Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir. 1993). *See also Koger v. Bryan*, 523 F.3d 789, 802 (7th Cir. 2008). The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Koger*, 523 F.3d at 802 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The determination of qualified immunity is a two-part inquiry: (1) whether the law was clearly established at the time of the alleged violation and (2) whether reasonably competent officials would agree on the application of a clearly established right to a given set of facts. *Id*.

It is undisputed that the Whitlocks had a clearly established right not to be arrested without probable cause. Accordingly, the Court must evaluate the objective reasonableness of Officer Brown's acts. "With an unlawful arrest claim in a § 1983 action when a defense of qualified immunity has been raised, we will review to determine if the officer actually had probable cause, or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Here, Officer Brown is entitled to qualified immunity if reasonable officers would have believed that probable cause existed to arrest Mr. and Mrs. Whitlock. *See Malley*, 475 U.S. at 340 (stating that officers are not immune if, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.").

12

Here, reasonable officers could have believed that probable cause existed to arrest the Whitlocks for Conversion, a Class A misdemeanor, pursuant to Ind. Code § 35-43-4-3. That statute states in relevant part:

> Sec. 3. (a) A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor.

Indiana Code 35-43-4-3. There is no dispute in this case that the Whitlocks knew that they possessed camping equipment, a backpack, and a wallet that did not belong to them. Based on their own statements, the Whitlocks maintained control over those items for nearly four hours and took the items out of the park with them prior to returning the items. There is also no dispute that Mr. Kohlhoff never gave the Whitlocks permission to take his property. On those facts alone, a reasonable officer could have believed that there existed probable cause to arrest the Whitlocks for Conversion, just as there was enough information that a reasonable officer would have filed documentation with the prosecutor seeking an arrest warrant for the same. That the Whitlocks were being good Samaritans or that they did not intend to maintain permanent control over the items would be relevant either as defenses to a Conversion charge or if the Whitlocks had instead been charged with Theft. What is relevant here is that Officer Brown believed – and other reasonable officers could have believed – that probable cause existed to believe that the items were converted and that a warrant should issue. The Whitlocks have not cited any authority which establishes that Officer Brown violated clearly established law based on the facts of

13

this case. Accordingly, Officer Brown is entitled to qualified immunity, and Defendant's motion for summary judgment on this issue must be granted.

   C. *State Law Claims*

Plaintiffs' Complaint also sets forth a pendant state law claim for false arrest, and the Defendant has moved for summary judgment on this issue. The Complaint states that Officer Brown falsely accused the Plaintiffs of Conversion resulting in their unlawful arrest in Tippecanoe County several weeks after the incident at Indiana Dunes State Park. Complaint at ¶ 7.

Indiana Code § 34-13-3-3(6), the Indiana Tort Claims Act ("ITCA"), provides that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . (6) The initiation of a judicial or an administrative proceeding." The phrase "initiation of a judicial proceeding" is defined as:

> Criminal Proceedings are initiated by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused. Thus one who, personally or by a third person for whose conduct he is responsible under the law of agency, presents to a magistrate a sworn charge upon which a warrant of arrest is issued, initiates the criminal proceedings of which the issuance of the warrant is the institution.

Restatement of Torts 2nd, Sec. 653, Comment c. In *Livingston v. Consolidated City of Indianapolis*, 398 N.E.2d 1302, 1305 (Ind. App. 1979), the Indiana Court of Appeals stated that a distinction is made in cases like this case, where charges are filed in a court of law resulting in an arrest warrant being issued. The Court stated:

14

> [b]efore a criminal proceeding can be filed, the prosecuting attorney must approve the information . . . and an arrest warrant cannot be issued until probable cause has been determined by a judge . . . Safeguards are thus provided . . . The public welfare requires that this choice (whether or not to initiate criminal proceedings) shall be free of all fear of personal liability.

*Livingston*, 398 N.E.2d at 1305-06.  The Court notes that the *Livingston* court did not determine the issue of whether the ITCA gives police officers immunity for false arrest due to the statute of limitations in that case;[2] however, the Court finds that the decision in *Livingston* is relevant to the issue of whether sending a probable cause affidavit to the prosecutor's office amounts to the initiation of a judicial proceeding.

In *Catt v. Board of Comm'rs of Knox County*, 779 N.E.2d 1, 5 (Ind. 2002), the Court stated that immunity assumes negligence but denies liability.  *See also Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003).  "'The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.'" *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000) (quoting *Ind. Dep't of Corr. v. Stagg*, 556 N.E.2d 1338, 1343 (Ind. Ct. App. 1990)).

An important fact in this case is that Officer Brown did not make the actual arrest

---

[2]The *Livingston* court did interpret, however, the language "initiation of a judicial proceeding" in the context of a malicious prosecution claim to include the issuance of a warrant. 398 N.E.2d at 1304.  *See also Board of Commissioners of Hendricks County v. King*, 481 N.E.2d 1327 (Ind. App. 1985) (interpreting "initiation of a judicial proceeding" in the context of a malicious prosecution claim to include bringing charges before a public official when to do so requires a determination of whether process should or should not be issued).

15

wherein Jesse and Jo Whitlock were taken into police custody.  Rather, the Whitlocks were arrested by an officer of the West Lafayette police department.  Therefore, the Court is not dealing with a case in which Officer Brown *executed* a warrant.[3]  Instead, this is a case in which Officer Brown merely prepared his Indiana Conservation Case Report and submitted his probable cause affidavit to the Porter County Prosecutor's Office.  The Prosecutor then reviewed the information before him, determined that charges should be filed, and a judge issued the arrest warrants.  The Court finds that the arrests in this case were the result of a judicial proceeding because, by filing his probable cause affidavit with the prosecutor, Officer Brown initiated a proceeding for the purpose of obtaining such remedy as the law allows – in this case, an arrest warrant.  *Indiana Department of Financial Institutions v. Worthington Bancshares, Inc.*, 728 N.E.2d 899, 902 (Ind. Ct. App. 2000), *trans. denied*.  *See also Edwards v. Vermillion County Hospital*, 579 N.E.2d 1347, 1348 (Ind. Ct. App. 1991), *trans. denied* (stating that the issuance of a warrant constitutes the initiation of a judicial proceeding).  Because the arrests were the result of the initiation of a judicial proceeding, the ITCA is triggered, and Officer Brown is entitled to immunity under the ITCA.  *Livingston*, 398 N.E.2d at 1305-06.

V.  Conclusion

---

[3] In *Barnes v. Wilson*, 450 N.E.2d 1030, 1033 (Ind. Ct. App. 1983), the court held that "where an officer executes a warrant, and believes in good faith that the person taken into custody is the person named in the warrant, the officer will not be civilly liable in an action for false imprisonment absent circumstances tending to suggest that the wrong person has been arrested."

16

For the reasons stated above, the Plaintiffs' Motion for Partial Summary Judgment [DE 31] is **DENIED**, and the Defendant's Motion for Summary Judgment [DE 32] is **GRANTED**.  The clerk is ordered to enter judgment in favor of the Defendant and close the case.  Each party is to bear its own costs.

**SO ORDERED on June 27, 2008**

                                                  **/s/ ALLEN SHARP**
                                          **ALLEN SHARP, JUDGE**
                                          **UNITED STATES DISTRICT COURT**